| | |
|---|---|
| BINGHAM McCUTCHEN LLP<br>ALFRED C. PFEIFFER JR. (SBN 120965)<br>RANDY MICHELSON (SBN 114095)<br>KRISTEN A. PALUMBO (SBN 215857)<br>Three Embarcadero Center<br>San Francisco, CA 94111-4067<br>Telephone: 415.393.2000<br>Facsimile: 415.393.2286<br><br>Attorneys for Defendants<br>Indivos Corporation, Solidus Networks, Inc. and U.S. Bank National Association aka U.S. Bank | |

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re EXCEL INNOVATIONS, INC.,<br><br>Debtor. | Case No. 04-53874-ASW11<br><br>Chapter 11<br><br>Adversary No. 04-5217 |
| EXCEL INNOVATIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INDIVOS CORPORATION, SOLIDUS NETWORKS, INC., and U.S. BANK NATIONAL ASSOCIATION aka U.S. BANK,<br><br>Defendants. | **DECLARATION OF LARRY P. GINSBURG IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 17, 2006<br>Time: 3:00 p.m.<br>Place: Courtroom 3099<br>Honorable Arthur S. Weissbrodt |

I, Larry P. Ginsburg, declare as follows:

1. I was a member of Indivos Corporation's ("Indivos" or "the Company") Board of Directors from March 1999 until its merger with Solidus Networks, Inc. ("Solidus") in July 2003. I am currently an SEC Registered Investment Advisor affiliate, a Registered Securities Principal with the National Association of Securities Dealers (NASD), and a Certified Financial Planner. I have personal knowledge of the facts stated herein and, if called and sworn as a witness, could and would testify competently thereto.

2. I was introduced to Indivos around 1996. At that time, Indivos was known as SmartTouch LLC, later incorporated to become SmartTouch, Inc. SmartTouch, Inc. was later renamed Veristar Corporation, and was finally renamed Indivos Corporation. My introduction came via my longtime relationship with David Mendelsohn, both as Mr. Mendelsohn's friend and as his financial advisor. Mr. Mendelsohn is Ned Hoffman's stepfather-in-law. I later became financial advisor for Mr. Hoffman and his family, though I eventually had to terminate this relationship because I could not support his conduct.

3. While I was initially only an investor in Indivos, in 1999, Mr. Hoffman nominated me to the Board of Directors of the Company to fill one of the three seats that he controlled on the Board at that time.

4. The Board of Directors terminated Mr. Hoffman from the Company in November 1999, for various misconduct detrimental to the interests of the company. Among his acts, Mr. Hoffman altered an Indivos Private Placement Memorandum to list himself as CEO of the company (when he was not) and then proceeded to take actions without company authority. As part of the Settlement Agreement that Mr. Hoffman signed with Indivos in June 2000, Hoffman placed his and Excel's shares in a voting trust. Mr. Hoffman selected me, along with his two fellow Excel Directors, Mr. Mendelsohn and Mr. Silen, to act as Co-Trustees under a Voting Trust and Standstill Agreement that was part of the larger Settlement Agreement. The Indivos Board consented to our acting as the three Co-Trustees. As Co-Trustees, we exercised

2

the voting rights of the shares held in trust.

5. Also as part of the Settlement Agreement, Hoffman pledged his and Excel's shares of Indivos stock as security for Hoffman's performance under the Voting Trust via a Pledge Agreement that was part of the larger Settlement Agreement. Upon execution of the Pledge Agreement, the Howard Rice Nemerovski Canady Falk & Rabkin law firm, Indivos' attorney and agent in connection with the Settlement, took possession of the stock certificate representing Excel's 1,998,000 shares of Series A Preferred Stock in Indivos.

6. The "Standstill" portion of the Voting Trust and Standstill Agreement refers to certain restrictions placed on Mr. Hoffman to prevent him from interfering in shareholder votes or company management. Mr. Hoffman willfully violated his agreement not to interfere with company management within months of entering into the Voting Trust and Standstill Agreement.

7. In the course of the first year of the Voting Trust and Standstill Agreement (i.e., between June 16, 2000 and June 16, 2001), Hoffman continuously meddled in the company's affairs. Specifically, in an attempt to subvert the Company's processes, he scheduled private meetings with a number of Indivos' executive personnel, including Ryan Ross, Indivos' Vice President of Business Development, and Frank Pierce, Indivos' Vice President of Sales and Marketing. At those meetings, Hoffman criticized Indivos' management and attempted to influence and direct the affairs of the Company. The Standstill portion of the Voting Trust and Standstill Agreement prohibited Hoffman from doing any of these things.

8. In addition, at Indivos Board meetings prior to June 16, 2001 (which Hoffman was permitted to attend as an "observer" under the terms of the Settlement and which I attended as a Board member), Hoffman acted inappropriately and was consistently contentious, disruptive and difficult.

9. Hoffman's breaches continued during the second year of the Voting Trust and Standstill Agreement (between June 17, 2001 and June 16, 2002). As just an example,

1  Hoffman was recruiting people for Indivos' management and was repeatedly sending emails to
2  members of the Indivos Board (in addition to myself) criticizing management and attempting to
3  influence and interfere with the decisions of the company.
4      I declare under penalty of perjury under the laws of the State of California and the
5  United States of America that the foregoing is true and correct.
6      Executed on March 2, 2006, in Oakland, California.

*Larry P. Ginsburg*

4

DECLARATION OF LARRY P. GINSBURG

SF/21659093.1

Case: 04-05217   Doc# 80   Filed: 03/03/06   Entered: 03/03/06 17:56:14   Page 4 of 4